## 49541. CROCKER v. CROCKER et al.

CLARK, Judge.

A study of the record in this appeal from a contempt judgment in a child custody case indicates the trial judge sought to balance the scales of justice. When an appellate court makes such bravura effort and thereby temporarily departs from the harmony and symmetry of the law, the result is generally categorized by the cliche: "Hard cases make bad law."

This appeal by the contemner who was a witness but not a party had its inception with a court order entered in the suit of Karen Ramsaur Crocker v. Douglas Kent Crocker wherein the wife sued her husband for divorce, alimony, child support and custody of their five-month-old son. The husband filed both an answer and cross action seeking to have custody of the infant child awarded to him. Following the first rule nisi hearing the court awarded the wife child support and attorney fees along with temporary custody of the child. This order dated March 23, 1973, spelled out the husband's

visitation rights, as to time and place and continued a previous restraining order forbidding molestation of the wife.

Although this order was dated March 23, 1973, it was not filed with the clerk until April 23. Four days after the filing of the order the husband sought a modification, his basis being that the written order did not conform with the oral judicial statements and that his visitation privileges had been interfered with at the home of the wife's parents. The allegations included threats to his life and the brandishing of a shotgun. The wife's parents were made parties to the rule nisi. In a holographic two-page order dated July 3 by another trial judge than the one who had first acted, the visitation rights as to time and place were changed plus a provision for the husband's brother to pick up the child from its place of abode, the residence of its maternal grandparents. The order specifically restrained the grandparents on both sides from interference and harassment and declared "no party or person shall take the child of the parties from the State of Georgia during the pendency of these proceedings."

On August 20, the wife filed a motion for a special hearing "as soon as possible" with an allegation that "Defendant had failed and refused to abide the order of the Court and has absconded with the child—having taken the child from the plaintiff's residence and refused to return him." (R. 26). A hearing was set for August 24.

Appellant, Harold Crocker, the husband's father, was subpoenaed by the plaintiff wife for this hearing. When he was placed upon the stand as an adverse witness the transcript shows that the court limited the issue "to the question of the child." (T. 4). During the interrogation the witness insisted he had no knowledge of the child's whereabouts and that he had not heard from the child's father, his own son. At the conclusion of the appellant's testimony, the trial judge stated: "I'm involved a little more than usual. Don't let any witness leave until I give permission. Let them stay outside. It's my order that permitted this to happen, and it's my duty to—if any mischief was allowed—to rectify it, and anybody whose [sic] a party to it is subject to the order of the court." (T.

8). After numerous other witnesses had testified, the appellant was recalled to the witness stand by counsel for his son, the defendant, the attorney acting in the absence of his client. Additional interrogation followed at the conclusion of which the trial judge stated, "Take an order finding from the evidence Mr. Crocker is in contempt of court and order that he be taken into custody and held in the county jail for 20 days or until the child is returned, whichever is sooner."

After serving a portion of his sentence the contemner filed a motion for bond stating his desire "to appeal to the Court of Appeals as he feels he is not guilty of contempt of court." The trial jurist granted this request and the instant appeal followed.

1. "In cases of constructive contempt of court, where the alleged contumacious conduct is disobedience to a mandate of the court, not an act in the presence of the court or so near thereto as to obstruct the administration of justice, the law requires that a rule nisi issue and be served upon the accused, giving him notice of the charges against him, and that he be given an opportunity to be heard. *Mendel v. Mendel,* 202 Ga. 675 (44 SE2d 257); *Williams v. Mann,* 188 Ga. 212, 215 (3 SE2d 557); *Harris v. Harris,* 205 Ga. 105 (52 SE2d 598). See also *Wheeler v. Harrison,* 57 Ga. 24, and *Carson v. Ennis,* 146 Ga. 726, 728 (92 SE 221, LRA 1917E 650); *Garland v. State of Ga.,* 99 Ga. App. 826, 830 (110 SE2d 143).

"*The notice given by the rule nisi is to afford the accused a reasonable time in which to prepare his defense to the charge that he had violated the court's order.*" *Barnes v. Tant,* 217 Ga. 67, 72 (121 SE2d 125). (Emphasis supplied.)

In the case at bar, the contemner was not apprised of the nature and purpose of the hearing until it was announced by the court. We do not think the court's unexpected announcement was sufficient to afford the contemner "a reasonable time in which to prepare his defense." "This requirement of reasonable notice in a case involving an alleged *indirect* contempt is not satisfied by a showing that the accused was present in court at the time of trial and adjudication and 'had actual notice then and there of what was going on' [cit.], but

rather contemplates and necessitates a written notice fairly and fully informing the accused of the specific acts of contempt with which he is charged, and so given as to afford 'a reasonable time to make his (or her) defense.' [Cit.] Any notice short of that would make a hollow mockery of the fundamental and abiding truth that reasonable notice to one whose civil rights or personal liberty may be affected is a veritable cornerstone of our judicial system, would constitute nothing more than an exquisite exercise in frustrating futility, sometimes misleading and always meaningless, and would be but sounding brass and tinkling cymbal, a notice in form but not in substance." G———— v. Souder, 305 S. W. 2d 883, 886 (Mo. 1957).

The failure to give the requisite rule nisi to an alleged contemner may, of course, be waived. As the Supreme Court noted in *Mendel v. Mendel,* 202 Ga. 675, 677 (44 SE2d 257), "This case is analogous to a petition without a process. Ordinarily a judgment founded thereon is void, unless process has been waived." But such a waiver cannot be imputed unless it be shown that the notice was unequivocally waived. "[W]hether they were in fact actually present or not, no waiver could be imputed to them, unless it was proved that they unequivocally waived the invalidity of the process." *Wallace v. Kent,* 15 Ga. App. 615, 616 (83 SE 1100). There is no evidence of such waiver by the contemner in this case.

Of course, where a contemner voluntarily appears and defends against the contempt proceedings, it is not required that he be served with a rule nisi. See, e.g., People v. Knapp, 4 Misc. 2d 449 (157 NYS2d 820), in which it was ruled that where the contemner had been fully advised of the charges against him, had been represented by counsel, submitted briefs, and vigorously urged defenses of law, no show cause order was required to be served. However, in the case at bar, the contemner neither voluntarily appeared nor urged a defense. Having appeared in response to a subpoena presented by his daughter-in-law, it can not be said the contemner voluntarily appeared to answer the charges of contempt. Furthermore, contemner was not fully advised of the

charges against him, he was not represented by counsel, he did not submit briefs; he merely answered the questions propounded by counsel and the court.

In sum, the contemner did not appear voluntarily and he did not present a defense. As was ruled in a similar case, "If . . . one appears and defends against contempt proceedings, it is not required that he be served with notice to show cause. [Cit.] But we take it that such appearance and defense must be voluntary. If the defendant be forcibly brought into court for one purpose, it cannot be said he voluntarily appeared for that or any other purpose. And neither can it be said he defended the charge when the only thing he did was to sit mute, except when questioned by the court." Ex Parte Quan, 39 Ariz. 13 (3 P2d 522).

2. The trial judge erred in adjudging the contemner in contempt of court when the contemner had not been served with a rule nisi giving notice of both the charges against him and of his opportunity to be heard.

3. Until the contemner was legally served with rule nisi, the court had no jurisdiction to enter any order in the case with respect to the contemner's alleged contumacious conduct, and the further proceedings were nugatory. *Alliance Ins. Co. v. Williamson,* 33 Ga. App. 539 (126 SE 886). Accordingly, this court will not consider other alleged errors. *Williams v. Mann,* 188 Ga. 212, 215 (3 SE2d 557); *Roberts v. Roberts,* 219 Ga. 741, 743 (135 SE2d 880).

*Judgment reversed. Bell, C. J., and Quillian, J., concur.*

SUBMITTED JULY 1, 1974 — DECIDED SEPTEMBER 10, 1974.

*Mary Joyce Johnson,* for appellant.