## A04A2233. HALL v. MONROE COUNTY, GEORGIA.
(611 SE2d 120)

ADAMS, Judge.

Roy Hall d/b/a Hall's Tree Service, appeals the trial court's order finding him in wilful contempt of the court's prior consent order prohibiting him from operating a commercial enterprise at his residence. We affirm the trial court's finding of contempt, but vacate the court's award of attorney fees and remand for further proceedings on that issue.

"In civil contempt appeals, if there is any evidence from which the trial court could have concluded that its order had been violated, we are without power to disturb the judgment absent an abuse of discretion." (Citation omitted.) Norred v. Moore, 263 Ga. App. 516, 517 (588 SE2d 301) (2003). See also Simpkins v. Simpkins, 278 Ga. 523, 524 (1) (603 SE2d 275) (2004).

On January 13, 2003, the superior court entered a consent order which temporarily and permanently restrained and enjoined Hall from (1) operating a commercial business at his residence in Monroe County and (2) routinely hauling logs and debris commercially to and from his residence. The order, however, did not preclude Hall from removing trees, brush and associated debris from his own property. Monroe County subsequently filed a motion for contempt alleging that Hall had acted in wilful contempt of this order.

At the hearing on the motion, the evidence showed that Hall has a business called Hall's Tree Service involving the removal and disposal of trees. In other words, Hall's Tree Service cuts down trees, picks up the wood and removes it from its customers' property. Hall admitted that he sometimes brought wood and chips to his house for his "personal use." Hall's Tree Service does not have a separate office, but has a listing in the phone book that reflects Hall's personal phone number and residence address as the business's phone number and address. After the entry of the consent order, Hall had the same phone number painted on the sides of his trucks. The business phone rings in Hall's house, although he often forwards the calls to his cell phone, and he stores all his business records and documents in a drawer at his house.

Hall stated that he owned several large trucks that travel up and down the road where he lives about once every two to three weeks, or at least once a month bringing wood to his house for his personal use. He also hauls wood to his friend's sawmill. Hall testified that since the January 2003 consent order, he keeps the trucks up the street at another business. He denied bringing home wood from his job sites and burning it. Instead, he said that he gives the wood and wood chips to people who want it. But Hall does keep one piece of equipment at his house that he can use in his business if he needs it. He admitted

that since the time of the consent order, employees of Hall's Tree Service park at his house and often travel to and from job sites with him in his car. Hall also admitted that he had several burn pits on his property, but he said they were used only when he was clearing wood from his own land.

The county presented testimony from several of Hall's neighbors, however, who said that throughout 2003 after the consent order was entered, they observed the trucks from Hall's business driving to his residence as often as two to three times per week, sometimes twice in one day. They testified that the trucks would come in loaded with various kinds of wood, including pine chips and debris. The trucks would enter Hall's property loaded and return empty. Some of the neighbors testified to smelling and observing wood being burned after the loads were dropped on Hall's property and at times when it did not appear that Hall was clearing his own property. The neighbors testified that they often observed wood burning that appeared to come from property other than Hall's. One neighbor, for example, presented photographic evidence showing large pine tree trunks, which the neighbor said were far larger than any trees on Hall's property.

Hall presented evidence showing that he often cut down trees for his neighbors without charge, and gave away wood chips and logs to his neighbors and others. He also presented evidence from at least one witness who testified that he would go to different job sites and pick up wood for Hall and haul it away. Further, Roy Shelton, the man whom Hall hired to clear his own land, testified that he had built the burn pits and that he had only burned debris from Hall's own land in them, although Shelton conceded that he was only on the property during one month in 2003. He also said that Hall had some large trees on his land, some as big as the ones in the neighbor's picture. Shelton additionally stated that Hall sometimes brought wood chippers from his business to his house, perhaps to service them.

1. Hall first asserts that the trial court abused its discretion in finding him in wilful contempt of the consent order because there was no evidence that he made any profit from the activities conducted on his property and thus no evidence that he conducted a commercial enterprise there. "In order for one to be held in contempt, there must be a willful disobedience of the court's decree or judgment." (Punctuation and footnote omitted.) *Simpkins v. Simpkins*, 278 Ga. at 524 (1). But the evidence supported the trial judge's finding that Hall continued to operate his commercial business out of his house as, for example, he maintained no separate office, but kept all of his business records there and continued to use his residence phone and address for the business. And the trial court could have reached the reasonable inference from evidence of Hall's routine delivery of wood

products and debris in his business vehicles to and from his residence that the materials were coming from his commercial jobs and that he was in direct violation of the order prohibiting him from hauling logs and debris commercially to and from his property. Accordingly, we find no abuse of discretion in the trial court's finding of wilful contempt.

2. Hall next asserts that the trial court erred in ordering him to pay the county $2,500 in attorney fees in connection with the contempt motion as there is no express authority for the award. A trial court may award attorney fees in a civil contempt action only under an express statutory power or authority. "No authority exists to award attorney fees merely because the action is for contempt." *Minor v. Minor*, 257 Ga. 706, 709 (2) (362 SE2d 208) (1987). See also *Norred v. Moore*, 263 Ga. App. at 518 (2) (a).

Monroe County requested in its motion for contempt that it be awarded reasonable attorney fees and expenses of litigation from Hall but did not cite any specific authority for such an award either in the motion or at the hearing. Nevertheless, the trial court may have been authorized to award attorney fees under statutory authority such as OCGA § 9-15-14. Subsection (b) of that statute, for example, permits the recovery of the costs of litigation if the court finds that a party "brought or defended an action, or any part thereof, that lacked substantial justification or that action, or any part hereof, was interposed for delay or harassment" or if the court finds that a party "unnecessarily expanded the proceeding." OCGA § 9-15-14 (b). However, when a trial court decides in its discretion to award such attorney fees and costs, "it is incumbent upon the court to specify the conduct upon which the award is made. A judgment devoid of such findings must be vacated and the case must be remanded for reconsideration." (Citations omitted.) *McKemie v. City of Griffin*, 272 Ga. 843, 844-845 (4) (537 SE2d 66) (2000). Accordingly, we remand this case to the trial court for reconsideration of the award of attorney fees and to allow the court to "make express findings of fact and conclusions of law as to the statutory basis for any such award and the conduct which would authorize it." Id. See also *Reese v. Grant*, 277 Ga. 799 (596 SE2d 139) (2004); *Rhone v. Bolden*, 270 Ga. App. 712, 715 (2) (608 SE2d 22) (2004); *Norred v. Moore*, 263 Ga. App. at 518 (2) (a).

*Judgment affirmed in part and vacated and remanded in part. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 3, 2005.

*Faulkner & Russell, Randall D. Russell, Sr.*, for appellant.
*W. Franklin Freeman, Jr.*, for appellee.